[No. D026130. Fourth Dist., Div. One. Mar. 30, 1999.]

MICHAEL BOLLINGER et al., Plaintiffs and Respondents, v.
SAN DIEGO CIVIL SERVICE COMMISSION et al., Defendants and
Appellants.

**COUNSEL**

John W. Witt and Casey Gwinn, City Attorneys, Anita M. Noone, Assistant City Attorney, and Lisa A. Foster, Deputy City Attorney, for Defendants and Appellants.

Everitt L. Bobbitt; and Sanford A. Toyen for Plaintiffs and Respondents.

## OPINION

NARES, J.—In this employment matter, Michael Bollinger and the San Diego Police Officers' Association (the Association) obtained a writ of mandate compelling the San Diego Civil Service Commission and Commissioners Linda LeGerrette, Robert P. Ottilie, Franne M. Ficara, Daniel E. Eaton and Al Best (collectively the Commission), to set aside its closed session ratification of a hearing officer's findings of fact and recommendation that Bollinger's demotion be upheld. The court agreed the Commission's act was void under Government Code[1] section 54957, a provision of the Ralph M. Brown Act (§ 54950 et seq.) (the Brown Act) because it failed to give Bollinger 24-hour written notice of his right to request a public hearing. We reverse.

### BACKGROUND

The facts are undisputed. On January 13, 1995, the San Diego Police Department demoted Bollinger from police agent to police officer II based upon his misconduct. He appealed to the Commission. A noticed public evidentiary hearing was held over three days in April and June 1995, with Commissioner Ottilie serving as the sole hearing officer.[2]

The Commission's written agenda for its August 3, 1995, meeting noted it would "recess into closed session . . . to ratify hearings in the cases of Michael Bollinger and [another person][.]" The Commission posted the agenda 72 hours before the hearing (§ 54954.2) and mailed a copy to the Association. Bollinger was notified of the meeting in a telephone call. During closed session, the Commission ratified Ottilie's factual findings and recommendation that Bollinger's demotion be upheld. Shortly thereafter, the Commission for the first time provided Bollinger with a copy of Ottilie's 22-page written report. Bollinger complained to no avail that he was deprived of the opportunity to respond to Ottilie's report before the full Commission made its decision.

Bollinger then filed this action for a writ of mandamus under Code of Civil Procedure section 1085. He alleged the Commission's decision was void as a matter of law under section 54947 because it failed to notify him in writing of his right to request a public hearing. The court agreed and tentatively granted the petition in a telephonic ruling; it confirmed its decision after oral argument.

---

[1]Statutory references are to the Government Code except where specified otherwise.

[2]The City of San Diego's civil service rules at the relevant time gave the Commission the discretion to "appoint one or more of its members to hear the appeal and submit findings of fact and a decision to [it]. Based on the findings of fact, the Commission may affirm, modify, or overturn the decision[.]"

## DISCUSSION

### I. *Standard of Review*

(1) Statutory interpretation presents a question of law subject to independent review. (*Board of Retirement* v. *Lewis* (1990) 217 Cal.App.3d 956, 964 [266 Cal.Rptr. 225].) " 'Our analysis starts from the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] In determining intent, we look first to the words themselves. [Citations.] When the language is clear and unambiguous, there is no need for construction. [Citation.] When the language is susceptible of more than one reasonable interpretation, however, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]' " (*Department of Fish & Game* v. *Anderson-Cottonwood Irrigation Dist.* (1992) 8 Cal.App.4th 1554, 1562 [11 Cal.Rptr.2d 222], citing *People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007-1008 [239 Cal.Rptr. 656, 741 P.2d 154].)

### II. *The Brown Act*

#### A

In enacting the open meeting requirements of the Brown Act in 1953, the Legislature expressly declared "the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly." (§ 54950.) Section 54953 accordingly provides "[a]ll meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, except as otherwise provided in this chapter."

The Brown Act's "personnel exception" to the open meeting rule, found at section 54957, provides in relevant part: "Nothing contained in this chapter shall be construed to prevent the legislative body of a local agency from holding closed sessions . . . during a regular or special meeting to consider the appointment, employment, evaluation of performance, discipline, or dismissal of a public employee or to hear complaints or charges brought against the employee by another person or employee unless the employee requests a public session.

"As a condition to holding a closed session on specific complaints or charges brought against an employee by another person or employee, the

employee shall be given written notice of his or her right to have the complaints or charges heard in an open session rather than a closed session, which notice shall be delivered to the employee personally or by mail at least 24 hours before the time for holding the session. If notice is not given, any disciplinary or other action taken by the legislative body against the employee based on the specific complaints or charges in the closed session shall be null and void."[3]

"[T]he underlying purposes of the 'personnel exception' are to protect the employee from public embarrassment and to permit free and candid discussions of personnel matters by a local governmental body." (*San Diego Union* v. *City Council* (1983) 146 Cal.App.3d 947, 955 [196 Cal.Rptr. 45].) We must nonetheless "construe the 'personnel exception' narrowly and the 'sunshine law' liberally in favor of openness [citation] . . . ." (*Ibid.*)

In *Furtado* v. *Sierra Community College* (1998) 68 Cal.App.4th 876 [80 Cal.Rptr.2d 589], the court interpreted the first paragraph of section 54957 to allow an employee to request a public hearing only where "complaints or charges" are involved. It reasoned the phrase " 'unless the employee requests a public session' " applies only to the immediately preceding phrase " 'or to hear complaints or charges brought against the employee' . . . ." (68 Cal.App.4th at p. 881.) ▮ "An accepted rule of statutory construction is that qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent." (*Ibid.*)

▮ The *Furtado* court held that negative comments in an employee's performance evaluation did not constitute "complaints or charges" within the meaning of section 54957. "[T]o merge employee evaluations into the category of 'complaints or charges' in order to permit an open session is effectively to rewrite the statute." (*Furtado* v. *Sierra Community College, supra,* 68 Cal.App.4th at p. 882.) "[T]he Legislature has drawn a reasonable compromise, leaving most personnel matters to be discussed freely and candidly in closed session, but permitting an employee to request an open session to defend against specific complaints or charges brought against him or her by another individual." (*Ibid.*; see also *Fischer* v. *Los Angeles Unified School District* (1999) 70 Cal.App.4th 87 [82 Cal.Rptr.2d 452] [performance evaluation of probationary teacher does not constitute the bringing of "specific complaints or charges"].)

---

[3]Ordinarily, acts of a legislative body in violation of the Brown Act are not invalid; they merely subject the member of the governing body to criminal penalties. (*Griswold* v. *Mt. Diablo Unified Sch. Dist.* (1976) 63 Cal.App.3d 648, 657-658 [134 Cal.Rptr. 3]; § 54959.) Section 54957 thus affords an employee wrongfully deprived of written notice a valuable remedy.

██ Here, in contrast to *Furtado* and *Fischer,* the Commission concedes this matter does not involve a routine employee performance evaluation but "specific complaints or charges" other police officers brought against Bollinger.[4] It contends, though, that Bollinger was not entitled to 24-hour written notice of its August 3, 1995, closed session, because it was solely for the purpose of *deliberating* whether the complaints or charges justified disciplinary action rather than conducting an evidentiary hearing thereon.

The Commission relies upon the clause in the second paragraph of section 54957, which provides "the employee shall be given written notice of his or her right to have the complaints or charges *heard* in open session rather than a closed session[.]" (Italics added.) We also note that in the first paragraph of section 54957, the Legislature used "to consider" in reference to the "appointment, employment, evaluation of performance, discipline, or dismissal" of an employee, but used "to hear" in reference to "complaints or charges brought against the employee by another person or employee." To "consider" is to "deliberate upon[.]" (American Heritage Dict. (1981) p. 284, col. 1.) To "hear" is to "listen to in an official . . . capacity[.]" (*Id.* at p. 607, col. 2.) A "hearing" is "[a] proceeding of relative formality . . . , generally public, with definite issues of fact or of law to be tried, in which witnesses are heard and evidence presented." (Black's Law Dict. (6th ed. 1990) p. 721, col. 1.) The plain language of section 54957 lends itself to the interpretation the Commission urges.

The statute's legislative history further supports the Commission's position. The second paragraph of section 54957 was enacted by parallel Assembly and Senate Bills. (Stats. 1993, ch. 1136, § 12 (Assem. Bill No. 1426 (1993-1994 Reg. Sess.)); Stats. 1993, ch. 1137, § 12 (Sen. Bill No. 36 (1993-1994 Reg. Sess.)).) As originally introduced, both bills read in part: "As a condition to holding a closed session *on the complaints or charges to consider disciplinary action or to consider dismissal,* the employee shall be given written notice of his or her right to have a public hearing rather than a closed session, which notice shall be delivered to the employee personally or by mail at least 24 hours before the time for holding the session." (Sen. Bill No. 36 (1993-1994 Reg. Sess.) § 17; Assem. Bill No. 1426 (1993-1994 Reg. Sess.) § 17, italics added.)

Later, however, the italicized language was deleted and the bills were altered to what now appears in paragraph two of section 54957, cited *ante.* (Assem. Amend. to Sen. Bill No. 36, § 12 (1993-1994 Reg. Sess.) Aug. 19, 1993; Sen. Amend. to Assem. Bill No. 1426, § 12 (1993-1994 Reg. Sess.)

---

[4]Ottilie's written report shows several police officers accused Bollinger of disobeying numerous orders and failing to properly document the chain of custody of evidence.

Sept. 8, 1993.) The Legislature thus specifically rejected the notion an employee is entitled to 24-hour written notice when the closed session is for the sole purpose of considering, or deliberating, whether complaints or charges brought against the employee justify dismissal or disciplinary action. ■ "The rejection of a specific provision contained in an act as originally introduced is 'most persuasive' that the act should not be interpreted to include what was left out. [Citations.]" (*Wilson* v. *City of Laguna Beach* (1992) 6 Cal.App.4th 543, 555 [7 Cal.Rptr.2d 848].) ■ Accordingly, we conclude a public agency may deliberate in closed session on complaints or charges brought against an employee without providing the statutory notice.

## B

Under the particular facts here, however, a question remains: Was Bollinger entitled to be "heard," within the meaning of section 54957, by the Commission before it recessed into closed session to deliberate whether to adopt the factual findings and recommendation of the single hearing officer?

Bollinger argues the Commission violated his procedural due process rights by denying him the opportunity to respond to Ottilie's written factual findings and recommendation before it made its final decision. The Commission counters that the evidentiary hearing before a single hearing officer, and the opportunity to seek judicial review, satisfied due process requirements.[5]

■ " 'The Fourteenth Amendment to the United States Constitution "places procedural constraints on the actions of government that work a deprivation of interests enjoying the stature of 'property' within the meaning of the Due Process Clause." [Citations.] The California Constitution contains a similar provision. [Citations.]' " (*Townsel* v. *San Diego Metropolitan Transit Development Bd.* (1998) 65 Cal.App.4th 940, 946 [77 Cal.Rptr.2d 231].) "[I]n cases of public employment, the employee is entitled to due process in matters involving contemplated discipline." (*Robinson* v. *State Personnel Bd.* (1979) 97 Cal.App.3d 994, 1005 [159 Cal.Rptr. 222] (conc. opn. of Evans, J.).)

"Minimal standards of due process require that a public employee receive, prior to imposition of discipline: (1) Notice of the action proposed, (2) the grounds for discipline, (3) the charges and materials upon which the action is

---

[5]Because due process principles were not raised in the trial court or in the initial appellate briefing, we asked the parties to provide supplemental letter briefs on the issue. We have taken their responses into consideration.

based, and (4) the opportunity to respond in opposition to the proposed action. (*Williams* v. *County of Los Angeles* (1978) 22 Cal.3d 731, 736 [150 Cal.Rptr. 475, 586 P.2d 956]; *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 215 [124 Cal.Rptr. 14, 539 P.2d 774].) To be meaningful, the right to respond must afford the employee an opportunity to present his side of the controversy before a reasonably impartial and noninvolved reviewer who possesses the authority to recommend a final disposition of the matter." (*Titus* v. *Civil Service Com.* (1982) 130 Cal.App.3d 357, 362-363 [181 Cal.Rptr. 699]; accord, *Linney* v. *Turpen* (1996) 42 Cal.App.4th 763, 770 [49 Cal.Rptr.2d 813]; *Coleman* v. *Regents of University of California* (1979) 93 Cal.App.3d 521, 526 [155 Cal.Rptr. 589].) The use of a single hearing officer, whose findings and proposed decision are adopted by the public agency, complies with due process. (*Nat. Auto. & Cas. Co.* v. *Ind. Acc. Com.* (1949) 34 Cal.2d 20, 29-30 [206 P.2d 841].)

In *Titus* v. *Civil Service Com., supra,* 130 Cal.App.3d 357, a lieutenant in the sheriff's department received notice of his proposed discharge. He was given the materials upon which the disciplinary action was based and the opportunity to respond orally or in writing. After the employee argued his position to a chief, the chief recommended his firing. The undersheriff and two assistant sheriffs reviewed the matter and adopted the chief's recommendation. The employee appealed to the Civil Service Commission of Los Angeles County, which adopted the hearing officer's recommendation and sustained the firing.

The employee then sought a writ of mandate to compel his reinstatement, arguing his due process rights were violated when he was precluded from responding to the chief's recommendation before a final decision was made. In affirming the lower court's denial, the court explained: "The record discloses that Chief Knox possessed the authority to recommend the ultimate disposition to the charges against appellant, subject only to review by a panel consisting of the undersheriff and two assistant sheriffs. . . . Appellant was permitted to present his side of the controversy. Due process requires nothing more." (*Titus* v. *Civil Service Com., supra,* 130 Cal.App.3d at p. 363.)

The Administrative Procedure Act (§ 11500 et seq.), applicable to certain state agencies, provides that if a contested matter is heard by an administrative law judge, the agency may adopt the written proposed decision in its entirety. In *Greer* v. *Board of Education* (1975) 47 Cal.App.3d 98 [121 Cal.Rptr. 542], the court held that in that instance an employee has no right to receive the hearing officer's proposed decision or present any argument to the full agency before it acts. The court noted the aggrieved party's remedy

is to seek review in the superior court on the basis of the evidentiary hearing record.[6] (*Id.* at pp. 110-112; § 11517.)

In *Dami* v. *Dept. Alcoholic Bev. Control* (1959) 176 Cal.App.2d 144, 154 [1 Cal.Rptr. 213], the court likewise held "neither the language of [section 11517] nor constitutional principle requires that the proposed decision [of the hearing officer] be served prior to the rendition of the final one." (Accord, *American Federation of Teachers* v. *San Lorenzo etc. Sch. Dist.* (1969) 276 Cal.App.2d 132, 136 [80 Cal.Rptr. 758]; *Stoumen* v. *Munro* (1963) 219 Cal.App.2d 302, 314 [33 Cal.Rptr. 305]; *Strode* v. *Board of Medical Examiners* (1961) 195 Cal.App.2d 291, 297-298 [15 Cal.Rptr. 879].) It is only when the agency does not adopt the hearing officer's recommendation and reviews the evidence itself that the employee has the opportunity to argue the matter to the agency. (*Hohreiter* v. *Garrison* (1947) 81 Cal.App.2d 384, 396 [184 P.2d 323]; § 11517, subd. (c).)

California's Civil Service Act (§ 18500 et seq.) similarly provides the board may adopt the proposed decision of its representative or may hear the matter itself. Only in the latter instance is the employee allowed to make additional argument to the board. (§ 19582.) In *Sinclair* v. *Baker* (1963) 219 Cal.App.2d 817 [33 Cal.Rptr. 522], the court rejected the notion due process was violated where the board adopted the hearing officer's recommendation without allowing the employee to respond. The court found dispositive the reasoning of the cases concerning the Administrative Procedure Act. (*Id.* at pp. 822-823; accord, *Fichera* v. *State Personnel Board* (1963) 217 Cal.App.2d 613, 620 [32 Cal.Rptr. 159] [". . . due process is supplied by the hearing officer's taking of evidence, his findings and proposed decision, the decision of the board based on the findings and proposal, and by review by the court even though the last is not a trial de novo, followed by this appeal"].)

Where an administrative agency relegates the evidentiary hearing to one or more of its members, we observe the better practice would be to give the employee the opportunity to respond orally or in writing to the factual findings and recommendation before a final decision is made.[7] A hearing officer's report may contain critical inaccuracies and the employee's ability to address them would benefit everyone and result in a fairer process.

---

[6]Here, the City of San Diego's civil service rules required that a reporter record testimony taken at the evidentiary hearing.

[7]In its supplemental letter brief, the Commission advises that after Bollinger's case was heard, its rules were modified to allow an employee to challenge the proposed decision in writing prior to the final decision. The provision, however, expired after six months and has apparently not been renewed.

Given the above authorities, however, we are constrained to conclude Bollinger's minimum due process rights were satisfied. He received notice of the proposed demotion and the basis therefor and had the opportunity to fully respond at a public evidentiary hearing. Ottilie was a "reasonably impartial and noninvolved reviewer," and under the City of San Diego's civil service rules, he had the authority to recommend a final disposition of the matter. Moreover, Bollinger could have sought review of the substantive merits of the Commission's decision in his petition for writ relief, based upon the record of the evidentiary hearing before Ottilie.[8]

It follows that because Bollinger had no legal right to learn of or respond to Ottilie's factual findings and recommendation before the Commission ratified them, no portion of its August 1995 meeting can be construed as a "hearing" on complaints or charges within the meaning of section 54957. Rather, the matter was confined to deliberation which, as discussed, may be held in closed session. In sum, contrary to the trial courts' ruling, the Commission did not run afoul of the Brown Act and its action is valid.[9]

### DISPOSITION

The judgment is reversed. Bollinger to pay the Commission's costs on appeal.

O'Neill, J.,* concurred.

**WORK, Acting P. J.,** Concurring.—Although I concur in the opinion, I write separately to identify the narrow context of the legal issue we address in part II.A as presented to the trial court by Michael Bollinger's petition for mandate and the narrow confines of the trial court's judgment in response to that petition which is a subject of this appeal.

I also point out the procedural due process discussion in part II.B fails to consider the significance of the fact that, in this case, the hearing officer whose findings of fact and recommendation were considered by the San Diego Civil Service Commission (Commission) in executive session, was himself a commissioner and was present when his fellow commissioners

---

[8]While Bollinger did seek writ relief, he raised only the Brown Act issue and failed to submit the administrative hearing record or challenge the substantive merits of the Commission's decision.

[9]Given our holding, we deny without discussion Bollinger's request for sanctions under Code of Civil Procedure section 907 on the ground the Commission's appeal is frivolous.

*Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

considered his findings and recommendation. In response to our letter inquiry, we were advised, "The full Commission routinely meets with the hearing officer to fully discuss the proposed report of the hearing officer and ratify the findings that are prepared prior to the meeting." We were further advised that although more than three months transpired between the conclusion of the evidentiary hearing on these complaints and charges and the ratification of the hearing officer's findings and recommendation, Bollinger was first apprised of those findings and recommendation when served with a copy of the Commission's ratification decision.

## A.

Bollinger's petition for mandamus sets forth one narrow issue: whether the ratification action taken by the full Commission in closed session following a public evidentiary hearing was null and void for failure to notify Bollinger in writing that he also had the right to have the Commission's later ratification deliberations in open session. The issue was posed in light of the facts of this case. Here, Bollinger's evidentiary proceedings were heard by a single member of the Commission who had been designated as a hearing officer. More than three months after its conclusion, Bollinger received oral notice of the Commission's intent to meet in closed session to determine whether to ratify the hearing officer's findings and recommendation. Bollinger did not receive a copy of the hearing officer's findings or his recommendation. In spite of the oral notice, Bollinger did not make a specific request to have the deliberative session open.

Relevant to this appeal, the trial court found that although Bollinger was orally informed the deliberations would be held in a closed session, he never made a request for a public session. Finding actual notice irrelevant, the trial court confined its decision solely to whether Government Code section 54957 requires the Commission to give Bollinger written notice of a right to have the ratification deliberations conducted in public. Therefore, the court below did not, nor do we, address the broader issue of whether, had Bollinger specifically requested that deliberative process to be open, the failure to accede to his request would be a Ralph M. Brown Act violation.

## B.

Turning to the procedural due process discussion, I agree with the analysis as a stated general proposition. However, had the issue been framed in light

of the facts of this case, we would have had to address it in a more meaningful context.

First, it is true that procedural due process is usually satisfied by the mere availability of an appellate remedy. However, in a practical sense, in cases such as this, appellate review is less than meaningful to one who is denied the right to present his case, to argue its merits, and to dissect factual findings for the edification of those faceless decision makers who are empowered to remove, demote or discipline. As the question is posed in our opinion, we only decide that constitutional procedural due process did not require, although we believe it preferable, to permit Bollinger to appear before the full Commission after first receiving the hearing officer's recommended findings, for the purpose of enlightening the Commission members as to their validity and whether the evidence was fairly characterized in that report.

Be that as it may, there is an additional significant fact which we obtained from the parties upon our direct inquiry which sets this case apart from those cited. That is, the hearing officer Commission member whose findings and recommendation were ratified by the Commission was present in the closed session while his fellow Commission members engaged in the deliberations. Thus, Bollinger, who was not even apprised of the hearing officer's findings and recommendation until after they were ratified, was excluded from the Commission's "free and candid" discussion of his fate in the presence of the hearing officer who was present to defend, encourage, enlighten and "freely and candidly" respond to any concerns expressed by his fellow Commission members. Whether the hearing officer did anything more than merely sit silently and impassively while his findings and recommendation were considered and ratified by the Commission, or in fact participated in some manner during the closed proceedings, is not shown in this record. However, the fact of his presence alone, in a position to defend his findings and recommendation while preventing Bollinger from even being aware of their nature let alone having the ability to argue their validity to the Commission, transcends the procedural unfairness considered in any of the numerous cases cited by the majority. However, whether a hearing officer/commissioner's presence while his colleagues deliberate to ratify his findings in closed sessions, coupled with the failure to disclose the nature of those findings to the affected employee, denying him the opportunity to argue their validity before the commissioners meet in closed session with the hearing officer may deny the procedural due process guaranteed by the Fourteenth Amendment and article I, section 7, subdivision (a) of the California

Constitution, although a significant concern, is an issue not raised in this appeal.[1]

Therefore, subject to the comments expressed herein, I concur.

---

[1]During oral argument in a recent unpublished case, *Kathan* v. *Civil Service Com.* (Mar. 10, 1999) D028812, the city attorney advised that the commission had adopted an interim policy, pending a decision in this matter, for the commission to hold its deliberations on personnel matters arising out of complaints and charges in open session. We were told that conducting those deliberations openly had created no impediment to efficiency, appropriate disposition of those matters or candor.